UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **United States of America,** | Crim. No. 11-206 (JNE/JJG) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| **Travis Alan Bourbonnais,** | |
| Defendant. | |

JEANNE J. GRAHAM, United States Magistrate Judge

The above-captioned case came before the undersigned for a pretrial motion hearing on August 23, 2011. Kimberly A. Svendsen, Esq. appeared on behalf of the United States of America. Douglas Olson, Esq. appeared on behalf of Defendant Travis Alan Bourbonnais. This case was referred to this Court for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1(a). Defendant's non-dispositive motions will be addressed in a separate order. The Court will address Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 20) and Motion to Suppress Statements, Admissions and Answers (Doc. No. 21) in this Report and Recommendation. Each motion will be discussed in turn.

**I.    BACKGROUND**

On June 21, 2011, Defendant was charged by Indictment with Obtaining a Controlled Substance by Fraud, in violation of 21 U.S.C. § 843(a)(3), (d)(1). Defendant's Motion to Suppress Statements, Admissions and Answers (Doc. No. 21) initially concerned two statements

that Defendant made to law enforcement regarding the charge against him.[1]  First, on September 16, 2010, Defendant participated in an interview with Sergeant Matthew St. George of the Minneapolis Police Department at the Financial Crimes Unit (the "First Interview").  Second, on June 23, 2010, Defendant participated in an interview with law enforcement (the "Second Interview").

The Government intends to offer statements made at both interviews into evidence at trial.  However, because the Second Interview occurred post-*Miranda*, Defendant no longer contests the admissibility of the statements made at that time.  Thus, Defendant's motion to suppress (Doc. No. 21) solely concerns the admissibility of statements made during the First Interview, and at the August 23, 2011 hearing, the Government presented evidence to establish the same.

During the hearing, the Court received into evidence four exhibits from the Government, two of which the Government does not intend to introduce into evidence at trial (Gov't Exs. 1, 2).[2]  Sergeant St. George, who has been a police officer with the Minneapolis Police Department for sixteen years, was the sole witness at the hearing.  Post-hearing memoranda on the issue of suppression was not filed.

---

[1] Defendant also made allegedly incriminating statements to his employer prior to his termination in August 2010.  Because those statements were not made to law enforcement, Defendant does not contest their admissibility.

[2] The Government offered into evidence a CD recording of a September 15, 2010 phone conversation between Sergeant St. George and Defendant (Gov't Ex. 1); a CD recording of a September 16, 2010 phone conversation between Sergeant St. George and Defendant and a voicemail from Defendant to Sergeant St. George (Gov't Ex. 2); the alleged September 16, 2010 voluntary statement (Gov't Ex. 3); and a transcript of the same (Gov't Ex. 4).  Defendant did not object to this evidence being received.

The facts surrounding the First Interview are as follows. On September 15, 2010, at approximately 3:36 p.m., Sergeant St. George called Defendant, left a voicemail, and asked Defendant to return his phone call. (Gov't Ex. 1.) The purpose of the phone call was for Defendant to come into the police station to give a voluntary statement. When Defendant returned the phone call, Sergeant St. George called him back immediately, and Defendant agreed to come into the police station. The phone call lasted approximately three minutes. (*Id.*)

On September 16, 2010, at approximately 8:16 a.m., Sergeant St. George received a voicemail from Defendant, wherein Defendant stated that he could not go to the police station because he did not have enough money for gas and parking. (Gov't Ex. 2.) Sergeant St. George returned Defendant's phone call and informed him that the Minneapolis Police Department would pay for his parking. (*Id.*) At that time, Sergeant St. George also informed Defendant that any statement he would make at the police station would be voluntary and would give him an opportunity to "put his story out there." (*Id.*)

Approximately thirty minutes later, Defendant arrived at the police station. Sergeant St. George met Defendant outside the police station and told him to come inside the building. After offering Defendant something to drink, Sergeant St. George and Defendant entered the interview room. Defendant was not handcuffed or otherwise restrained when he entered the room. The room is approximately 10 x 10 ft., with a small conference table, a couple of chairs, and a door. After entering the room, Defendant sat in one of the chairs at the table, and Sergeant St. George sat across from him in a chair closest to the door.

Before the interview began, Sergeant St. George told Defendant that he was not under arrest, and shortly thereafter, the officer said that Defendant was free to leave at any time, and the door in the interview room was unlocked. (Gov't Exs. 3, 4 at 6.) The tone of the interview

was friendly, although Sergeant St. George did ask Defendant questions regarding his employment and the alleged diversion of controlled substances. At no point during the interview did Sergeant St. George yell at Defendant or make any promises or threats. Based on Sergeant St. George's experience and training, Defendant did not appear to be intoxicated or under the influence during the interview. Defendant was able to respond to questions and follow along. Further, Defendant did not appear to be more nervous than persons Sergeant St. George had interviewed in the past. During the interview, Sergeant St. George was dressed in plain clothes, and his weapons were concealed.

When the interview ended, Sergeant St. George escorted Defendant out of the interview room and out of the police station. The interview lasted approximately thirty-seven minutes, was recorded (Gov't Ex. 3), and later transcribed (Gov't Ex. 4).[3] Sergeant St. George did not advise Defendant of his *Miranda* rights at any time during the interview.

## II. DISCUSSION

### A. Motion to Suppress Statements, Admissions and Answers

The Government contends that Defendant's statements made during the First Interview are admissible because they were made voluntarily while Defendant was not in custody. The Fifth Amendment privilege against self-incrimination requires a police officer to advise persons of their *Miranda* rights before interrogating them in a custodial setting. *Illinois v. Perkins*, 496 U.S. 292, 297 (1990). Conversely, *Miranda* "does not preclude admission of statements that a defendant in custody volunteers and that are not the product of any interrogation by the police." *United States v. Waloke*, 962 F.2d 824, 829 (8th Cir. 1992) (citing *Rhode Island v. Innis*, 446

---

[3] Sergeant St. George testified at the hearing that the interview last approximately forty-seven minutes. However, upon reviewing Government's Exhibit 3, the conversation lasted thirty-six minutes and fifty-two seconds.

U.S. 291, 299–301 (1980)); *see also Miranda v. Arizona*, 384 U.S. 436, 478 (1966) ("Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence.").

"Interrogation," as contemplated by *Miranda*, can be "either express questioning or its functional equivalent." *Innis*, 446 U.S. at 300–01. The latter standard incorporates officers' words or actions, other than those normally incident to custody, which the officer "should know [are] reasonably likely to evoke an incriminating response." *Id.* at 301. "Polite conversation is not the functional equivalent of interrogation." *United States v. Tail*, 459 F.3d 854, 858 (8th Cir. 2006). Voluntariness is assessed in light of all the circumstances, including the level of coercion by the police, the length and setting of the encounter, and the defendant's personal characteristics. *Smith v. Bowersox*, 311 F.3d 915, 922 (8th Cir. 2002).

Here, there can be no dispute that Defendant was interrogated when he made the statements during the First Interview. Accordingly, this Court turns to the remaining elements of custody and voluntariness. In regard to custody, this Court finds that this element is lacking. During the First Interview, Sergeant St. George repeatedly told Defendant that he was not under arrest, and he was free to leave at any time. Although the interview room was small and the room's door was closed, the fact that it remained unlocked for the entire duration of the interview supports that Defendant was not in custody. Moreover, Sergeant St. George was wearing plain clothes during the interview, and his weapons were concealed at all times.

As for the element of voluntariness, this Court finds that based on the totality of the circumstances, Defendant made his statements freely. Sergeant St. George did not coerce Defendant to make any statements. Rather, Defendant drove to the police station on his own. When Defendant entered the police station, no officer handcuffed or otherwise restrained him.

Further, based on Sergeant St. George's experience and training, Defendant did not appear to be intoxicated or under the influence.  Defendant was able to respond to all of Sergeant St. George's questions during the interview, which lasted approximately thirty-seven minutes.  Also, Defendant did not appear to be more nervous than any of the other persons that Sergeant St. George had interviewed in the past.

Given the foregoing, the Court recommends that Defendant's motion to suppress statements be denied.

### B.     Motion to Suppress Evidence Obtained as a Result of Search and Seizure

The Government and Defendant agreed at the hearing that Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 20) was moot given that no search and seizure occurred.  Accordingly, the Court recommends that this motion be denied as moot.

Based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.     Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 20) be **DENIED AS MOOT**; and

2.     Defendant's Motion to Suppress Statements, Admissions and Answers (Doc. No. 21) be **DENIED**.


Dated: September 2, 2011

                                                   s/ *Jeanne J. Graham*
                                                   JEANNE J. GRAHAM
                                                   United States Magistrate Judge

**NOTICE**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **September 19, 2011**. A party may respond to the objections within fourteen (14) days after service thereof. Any objections or responses shall not exceed 3,500 words. The District Judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made. The party making the objections must timely order and file the transcript of the hearing unless the parties stipulate that the District Judge is not required to review a transcript or if the District Judge directs otherwise.